## PEOPLE, EX REL. McMILLAN *vs.* VISHER.

*Twelfth Judicial District Court, June,* 1857.

### FORECLOSURE—REDEMPTION.

A decree of foreclosure does not bar the equity of redemption in the mortgagor so as to prevent a creditor of the mortgagor from acquiring a lien upon it at any time before the deed is executed to the purchaser; a judgment creditor may redeem from a sale, under a prior mortgage upon the balance of the judgment due, even after a sale under said judgment has become absolute.

A sale under one judgment does not cut off the lien of a subsequent judgment until a deed is actually executed; under such sale, payment of redemption money under protest does not invalidate the redemption.

No subsequent act by a redemptioner, while the money is in the hands of the Sheriff, before paid over to the purchaser can affect the payment or redemption, although he should attach the money in the hands of the Sheriff. The Sheriff will be required by mandamus to execute the deed.

This is an application to compel the Sheriff of Marin County to execute a deed to the Relator, for the " Punta de Reyes" Ranch, in that County.

The facts as shown by the alternative writ, return and proofs in the case are these :

On the 5th day of December, 1857, Antonio M. Osio who was then

the owner of the premises, executed a mortgage on the same. This mortgage was afterwards assigned to Thomas G. Cary, Jr., and the premises after that sold to Andrew Randall.

On the 14th of September, 1853, Cary filed his bill in the 7th Judicial District for Marin County, to foreclose this mortgage, and a decree of foreclosure was entered therein on the 4th of December, 1854.

On the 7th day of February, 1855, the relator filed a transcript of a judgment in Marin County, which he had recovered against Andrew Randall.

On the 12th of March, 1855, the interest of Randall in the premises was sold under an execution issued upon a judgment in favor of one Jesse Smith against Randall, and the premises and the purchaser under that sale had taken his deed on the 23d day of February, 1856.

On the 21st day of July, 1855, relator recovered another judgment against Randall, and on the 28th day of July, 1855, a transcript of this judgment was also filed in the office of the Recorder of Marin County.

On the 17th of March, 1856, respondent as Sheriff of Marin County, sold the interest of Randall in the premises under an execution issued upon relator's first judgment, and the relator became the purchaser, and the respondent executed a deed to him, under this sale, on the 26th of December, 1856.

On the 14th of June, 1856, the respondent as Sheriff of Marin County, sold the premises under a plaintiff's order of sale issued upon the decree of foreclosure, entered on the 4th of December, 1854, and Cary became the purchaser for $16,000, and took a certificate of sale, which certificate together with other documents, were subsequently assigned to John Hyatt.

The respondent then made and filed his report of sale, reporting a deficiency still due upon said decree of $1727 76; (the mortgage and decree bore interest at 5 per cent. per month.)

On the 13th of December, 1856, the relator with his counsel went to the office of the respondent in Marin County, and gave him notice in writing, that he intended to redeem the premises from the sale under the decree of foreclosure, and also served upon the respondent certified copies of the dockets of his two judgments docketed in

Marin County, on the 7th day of February, 1855, and 28th of July, 1855, and an affidavit stating that both said judgments were liens upon the premises, and also stating the amount due upon each.  Relator then paid to the respondent $24,146 08, and took a receipt for the same, in which the respondent certified that the premises had been redeemed by the payment of that amount.  Immediately after, or accompanying the payment to the Sheriff, the · relator protested in writing that the amount paid was too large for the purposes· of a redemption, by about $6,700, and protested against the payment of that amount, and said that the amount was paid for the purpose of procuring the respondent's receipt and certificate that a redemption had been made.  At the same time the relator's counsel requested the respondent to deposit the money with Garrison, Morgan, Fretz and Ralston, Bankers in San Francisco, as an arrangement might be made with them to allow interest on the moneys and that it might be to his advantage.

On the 20th of December, (one month after the payment) the respondent came to San Francisco bringing the whole amount of the money with him, and on arriving in the city he deposited $14,000 of the money with Tallant & Wilde and $10,000 with Parrott & Co., two banking houses in the city.

On Monday, the 22d of December, the respondent went by appointment to meet Hyatt, the assignee of Cary, at the office of his counsel. And entering the office, respondent was· served with a summons and complaint, at the suit of relator, in an action against respondent, in which action relator claimed that the respondent was indebted to him $10,000 for money had and received to his use.  An attachment was issued in this suit for $6,400 upon the affidavit of the relator, and on the same day the money was attached in both the banking houses in which the same was deposited by direction of the relator.

On the 18th of February, 1857, while the money still remained attached in the banks, the relator filed a bill in Equity in this Court, and obtained an injunction restraining the respondent and his bankers from transferring or negotiating the certificates of deposit of the $24,000, or the money itself, or any part of it.

After the money had been attached the respondent executed a deed to the assignee of Cary under the foreclosure sale.

*Shafter, Park & Shafter,* for plaintiff.

*Curry* for defendant.

NORTON, J.—Held 1st: That a decree of foreclosure does not bar the equity of redemption in the mortgagor, so as to prevent a creditor of the mortgagor from acquiring a lien upon it at any time before a deed is executed to the purchaser under the mortgage sale

2d. That a sale under a judgment does not extinguish the lien of the balance of such judgment, for any purpose whatever until the deed of the Sheriff is actually executed under such sale, and that the judgment creditor so selling may redeem from a sale under a prior mortgage, upon the balance of his judgment, even after the sale under the judgment has become absolute by the expiration of six months from the sale.

3d. That the sale under one judgment does not cut off the lien of a subsequent judgment, until a deed is actually executed under such sale. That the expiration of six months after the sale under a judgment, does not cut off subsequent liens upon the premises (in the hands of the same judgment creditor) but that the execution of a deed is necessary for that purpose. The Court also held that the relator might redeem under his second judgment, notwithstanding the sale made under the Jesse Smith judgment and a deed given under it.

4th. That the payment of money under protest in writing, on a redemption does not invalidate the payment or affect the redemption.

5th. That no subsequent act on the part of the relator, while the money is in the hands of the Sheriff, before paying it over to the purchaser, who is entitled to it, and *for* whom it is paid, can affect the payment or redemption, although he seize and retake the money by attachment in a suit against the Sheriff.

And that, although the money was still attached in the hands of the Sheriff's depositories by the relator, so that it could not be paid over to the purchaser, still a mandamus will issue to require the Sheriff to execute a deed to relator. A peremptory mandamus was therefore allowed.